# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 14-CR-12 (GLS)** |
| v. | **Plea Agreement** |
| **ERIC J. FEIGHT,** | |
| Defendant. | |

---

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, and defendant **ERIC J. FEIGHT** (hereinafter "the defendant"), by and through the defendant's counsel of record, hereby enter into the following plea agreement pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure:

1) **The Defendant's Obligations:**

   a) **Guilty Plea:** The defendant will waive indictment and plead guilty to Count 1 of the Information in Case No. 14-CR-12 (GLS) charging him with Providing Material Support to Terrorists, in violation of 18 U.S.C. § 2339A(a).

   b) **Special Assessment:** The defendant will pay an assessment of $100 per count of conviction, pursuant to 18 U.S.C. § 3013. The defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100, payable to the U.S. District Court, at the time of sentencing.

c) **Compliance with Other Terms of Agreement:** The defendant will comply in a timely manner with all of the terms of this plea agreement.

d) **Forfeiture:** Pursuant to 18 U.S.C. § 981(a)(1)(C) & (G), and 28 U.S.C. § 2461(c), the defendant will consent to entry of an order directing forfeiture to the United States of the property described in the Forfeiture Allegation in the Information described above, or to any substitute assets, or to a money judgment, all as more fully set out below:

(1) any drawings, schematics or diagrams relating to the use, possession, construction, production, or acquisition of a weapon of mass destruction; and

(2) "---------" brand, model "—70" point-to-point wireless radio devices.

2) **The Government's Obligations:**

a) **Non-prosecution for other offenses:** For so long as the defendant's guilty plea and the sentence remain in effect, the government will not seek other federal criminal charges against the defendant based on conduct described in Information 14-CR-12 (GLS) and/or in the paragraph of this agreement entitled "Factual Basis for Guilty Plea," occurring before the date on which the defendant signs this agreement. This agreement does not prevent the government from seeking charges based on other conduct.

b) **Compliance with Other Terms of Agreement:** The government will comply in a timely manner with all of the terms of this plea agreement.

3) **Potential Maximum Penalties:** The defendant understands that the Court can impose the following maximum penalties for the offense to which the defendant agrees to plead guilty, all as set out below:

a) **Maximum term of imprisonment:** Fifteen years, pursuant to 18 U.S.C. § 2339A(a).

b) **Mandatory Minimum term of imprisonment:** None.

c) **Maximum fine:** $250,000, pursuant to 18 U.S.C. § 3571(b)(3).

d) **Supervised release term:** In addition to imposing any other penalty, the sentencing court may require the defendant to serve a term of supervised release up to life, to begin after imprisonment. *See* 18 U.S.C. § 3583(j) & 18 U.S.C. § 2332b(g)(5)(B). A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to two years.

e) **Other adverse consequences:** Other adverse consequences may result from the defendant's guilty pleas as further described in paragraph F below.

4) **Elements of Offense:** The defendant understands that the following are the elements of the offense to which the defendant agrees to plead guilty. The defendant admits that the defendant's conduct satisfies each and every one of these elements.

a) First, the defendant provided material support or resources in the form of (a) training, that is instruction and teaching designed to impart a specific skill, or (b) expert advice and assistance, that is advice and assistance derived from scientific, technical, and other specialized knowledge; and

b) Second, the defendant provided this support or resources knowing or intending that they were to be used in preparation for, or in carrying out, a violation of 18 U.S.C. 2332a.

5) **Factual Basis for Guilty Plea:** The defendant admits the following facts, that those facts demonstrate the defendant's guilt for the offense to which the defendant is pleading guilty, and that there are no facts establishing a viable defense to that offense:

a) The government has advised the defendant and his attorney that in or about April 2012, the Federal Bureau of Investigation's (FBI's) Albany Joint Terrorism Task Force (JTTF)

received information, via the City of Albany Police Department, that Glendon Scott Crawford ("Crawford") was attempting to build a device that could kill people Crawford deemed "undesirable."  Law enforcement later learned that Crawford planned to create a mobile, remotely-operated, radiation-emitting device capable of killing people silently from a distance with lethal doses of ionizing radiation.  Crawford's intended targets were Muslims, Muslim-related organizations, and persons whom Crawford believed were contributing to the demise of the United States.  The FBI opened an investigation.

b)    Sometime in the summer or fall of 2012, Crawford presented his plan to FEIGHT, and FEIGHT agreed to assist in carrying it out by designing and building a remote control device capable of operating a radiation-emitting device from a distance.  Thereafter, Crawford and FEIGHT communicated about the plot on a number of occasions, in person, by text messages, and during telephone conversations.

c)    On November 14, 2012, FEIGHT met with Crawford and two undercover FBI agents in Scotia, New York.   The undercover FBI agents were posing as people capable of providing an industrial strength x-ray system that could be used as a weapon.  During the meeting, Crawford stated "We're building something to serve mankind through sterilizing medical waste."  FEIGHT understood this phrase to mean a plan to kill human targets by radiation poisoning, specifically Muslims. During the same November 14, 2012 meeting, FEIGHT expressed sympathy for Crawford's views about the perceived plight of the United States, and stated that he was disgusted with the direction that the United States was headed, that he was committed to affecting change on the United States, and that "the only thing necessary for evil to triumph is for good men to do nothing."  Later during this same meeting, FEIGHT stated that he was "in for a penny, in

for a pound." In addition, FEIGHT agreed that his primary role in the conspiracy would be to build a radio-wave-operated remote initiation device that could be used to activate the radiation-emitting device when the device was positioned near an unsuspecting target.

d)   On November 23, 2012, FEIGHT sent by electronic mail to one of the undercover FBI agents a document containing a computer-generated drawing that FEIGHT created in an effort to plan how the remote initiation device would be built and operate.

e)   In January 2013, FEIGHT provided Crawford with a list of electronic parts FEIGHT believed he needed to build the remote initiation device. During the winter and spring of 2013, Crawford purchased and obtained the parts on FEIGHT's list. Between January 2013 and May 2013, FEIGHT supplemented his initial list of parts necessary to build the remote initiation device, and on each occasion, Crawford obtained the part(s) requested by FEIGHT.

f)   On February 1, 2013, Crawford and FEIGHT met at a restaurant in Scotia, New York. During the meeting, Crawford asked how long it would take FEIGHT to build the remote initiation device once all of the parts had been gathered. FEIGHT stated that it would take him about a week to construct the remote initiation device. Crawford also asked FEIGHT if he was having second thoughts about participating in the conspiracy. FEIGHT told Crawford that he was still "in" and dedicated to the cause. After that time, FEIGHT limited his role to completing the remote initiation device and transferring to Crawford a functioning, operable remote initiation device capable of being integrated into a radiation-emitting device.

g)   On February 22, 2013, FEIGHT travelled to a parking lot in Schenectady, New York. As Crawford had instructed, FEIGHT located Crawford's unlocked Saturn vehicle in the

parking lot, opened the trunk, and removed a cardboard box that contained the electronic parts and components requested by FEIGHT to build the remote initiation device.

h)   On April 10, 2013, FEIGHT sent Crawford a text message stating that his preliminary testing of the remote initiation device had been successful.

i)   On April 15, 2013, FEIGHT sent Crawford a text message stating that he needed a few additional parts and components in order to complete the remote initiation device.

j)   On April 22, 2013, Crawford and FEIGHT met at a parking lot in Schenectady, New York, and Crawford gave the requested parts and components to FEIGHT.

k)   On May 1, 2013, FEIGHT and Crawford exchanged multiple text messages discussing how the remote initiation device would signal the user that it had turned the radiation-emitting device on and off.  In one text message, FEIGHT explained that the remote initiation device would have simple on/off lights and wrote, "[c]onsidering the application, operation without lights would be a BAD idea."

l)   On May 20, 2013, around noon, FEIGHT met Crawford in Schenectady, New York, and delivered the completed remote initiation device to Crawford.   Later that evening, Crawford met with one of the FBI undercover agents at a hotel parking lot in Albany, New York where they successfully tested the remote initiation device designed and built by FEIGHT and established that it had a range of up to 4/10ths of one mile. Crawford had attempted to persuade FEIGHT to attend this meeting/test, but FEIGHT did not attend.

m)   On June 18, 2013, the undercover FBI agents brought Crawford to an abandoned warehouse in the Northern District of New York. Inside the warehouse was an industrial grade x-ray system designed to release radiation at a level dangerous to human life.  This device was the same device depicted in the photographs that undercover FBI agents had

shown to Crawford on November 14, 2012 and that he had endorsed as sufficient for use in his plan. Crawford was arrested that day (June 18, 2013) after he had successfully completed assembly of the radiation emitting device, but before he had connected a remote initiation device to it. Unbeknownst to Crawford, the FBI had rendered the x-ray system safe.

n) For about ninety minutes on the afternoon of June 18, 2013, Crawford assembled various components that together comprised the radiation-emitting device. Once the device was assembled, Crawford said he did not want to turn on the radiation-emitting device to test it for fear that it would emit radiation from which Crawford and the others were not adequately protected. Crawford then was arrested.

o) On June 18, 2013, FEIGHT was arrested in connection with his role in the above-described conspiracy. After acknowledging and waiving his *Miranda* rights, FEIGHT stated, among other things, that:

i) he had over 25 years of experience working with industrial control/automation systems;

ii) at some point in 2012, Crawford approached FEIGHT and said that he was developing a device, principally an industrial x-ray system, with focused radiation to be used against "medical waste" and that the device needed to be operated remotely. FEIGHT told Crawford that he would build a remote device that could interface with the control panel of the industrial x-ray system. FEIGHT told Crawford that he would assist because he "disagreed" with many of the policies of the President of the United States and that he wanted to "take back our country";

iii) FEIGHT understood the term "medical waste" to be code for humans, particularly Muslims;

iv) during the November 14, 2012 meeting with Crawford and the two FBI undercover employees in Scotia, New York, FEIGHT agreed to build the remote initiation device in an effort to "fight back against people taking over the country";

v) Crawford obtained all of the parts for the remote initiation device requested by FEIGHT;

vi) in his basement and garage, FEIGHT constructed the remote initiation device and believed that it could operate on radio waves with a ¼ mile range; and

vii) during the time that FEIGHT was involved in the conspiracy, he understood that the radiation-emitting device Crawford was planning to use could emit lethal doses of ionizing radiation.

6) **Sentencing Stipulations:**

a) The parties agree that the base offense level for Providing Material Support to Terrorists, in violation of 18 U.S.C. § 2339A(a), is 28, pursuant to U.S.S.G. § 2M6.1(a)(2).

b) The parties agree that the adjusted offense level is increased by two (2) additional levels because the defendant used his special skills in electrical engineering and industrial automation to facilitate the commission of the offense. *See* U.S.S.G. § 3B1.3.

c) The parties agree that the adjusted offense level is increased by three (3) levels as the defendant intentionally participated in a conspiracy intended to target Muslims with a remotely-operated radiation device. *See* U.S.S.G. § 3A1.1(a).

d) Both parties reserve the right to present evidence and/or argument at the sentencing hearing as to the applicability of U.S.S.G. §3A1.4 and to move for or contest a departure pursuant to Application Note 4 of that guideline.

e) The government will recommend a 2-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G.§3E1.1(a) if, (i) through the time of sentencing, the government is convinced that the defendant has demonstrated "acceptance of responsibility" for the offense(s) to which the defendant is pleading guilty; and (ii) the government does not determine that the defendant, after signing this agreement, committed any other federal, state, or local crimes, or engaged in conduct that constitutes "obstruction of justice," as defined in U.S.S.G.§3C1.1.

f) The government will move for a 1-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G.§3E1.1(b) if the government is convinced that the defendant has accepted responsibility within the meaning of U.S.S.G.§3E1.1(a) and further assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, and the defendant otherwise qualifies for such adjustment by having a combined offense level of 16 before receipt of any acceptance of responsibility adjustment under U.S.S.G.§3E1.1(a).

7) **Waiver of Rights to Appeal and Collateral Attack:**   The defendant waives (gives up) any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. §§ 2241 and 2255, to appeal and/or to collaterally attack:

   a) The conviction(s) resulting from the defendant's guilty pleas;

   b) Any sentence to a term of imprisonment of 180 months or less;

   c) Any sentence to a fine within the maximum permitted by law;

   d) Any sentence to a term of supervised release within the maximum permitted by law;

   e) Any order of forfeiture or restitution imposed by the Court that is consistent with governing law and is not contrary to the terms of this agreement.

Nothing in this appeal waiver is meant to be or should be construed as a representation of or agreement concerning the appropriate sentence in this case.

---

A. **Right to Counsel:** The defendant has a right to assistance of counsel in connection with settlement of this case and understands that right.   Defense counsel has advised the defendant of nature of the charges to which the defendant is agreeing to plead guilty and the range of possible sentences.

B. **Waiver of Trial-Related Rights:** The defendant has the following additional constitutional rights in connection with the charges in this case: (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present defense evidence; and (vi) to remain silent and be protected against compelled self-incrimination.   The defendant understands that by pleading guilty, the defendant waives (gives up) these rights.

C. **Court Not Bound by Plea Agreement**: This plea agreement is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure. The Court is neither a party to, nor bound by this Plea Agreement. The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the United States Probation Office. If the Court rejects the provisions of this agreement permitting the defendant to plead guilty to certain charges in satisfaction of other charges, the Court will permit the defendant to withdraw the plea of guilty before sentencing, pursuant to Fed. R. Crim. Pro. 11(c)(5) & (d).

D. **Court Not Bound by Agreed-Upon Recommendations, Stipulations, and Requests**: If this agreement contains any provisions under Fed. R. Crim. Pro. 11(c)(1)(B) by which the government agrees to recommend, stipulates, or agrees not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the federal sentencing guidelines, or a policy statement, or sentencing factor does or does not apply, such a recommendation, stipulation, or request does not bind the Court, which may make independent factual findings by a preponderance of the evidence and may reject such recommendations, requests, and stipulations between the parties. If the Court rejects one or more recommendations, stipulations, or requests, the defendant is not entitled to withdraw the defendant's plea of guilty and is not released from the obligations described in this agreement. Under such circumstances, the government reserves the right to support and defend, in connection with any post-sentencing proceedings, any decision the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations, stipulations, or requests set out in this agreement.

11

E. **Sentencing:**

    a. **Maximum terms of imprisonment**: The defendant understands that the Court has discretion to impose a sentence within the statutory maximum sentence(s) set out in this agreement. If the defendant is pleading guilty to multiple charges, the Court may be required by law to have the sentences of imprisonment on the convictions resulting from those charges run consecutively to each other. Otherwise, the Court has discretion to have sentences of imprisonment run concurrently or consecutively. *See* 18 U.S.C. § 3584.

    b. **Mandatory minimum terms of imprisonment**: If specified in this agreement, the conviction on one or more charges to which the defendant has agreed to plead guilty may require imposition of a mandatory minimum term of imprisonment. In such cases, the court must impose a term of imprisonment no less than the required mandatory minimum term unless an exception to that requirement applies. Such exception may be dependent on a motion by the government.

    c. **Sentencing guidelines:**

        i. The actual sentence to be imposed upon the defendant is within the discretion of the sentencing Court, subject to the statutory maximum and mandatory minimum penalties, as described above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder. While the Court is not bound to impose a sentence within the applicable sentencing guidelines range, it must take into account the sentencing guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

    ii.  Any estimate of the defendant's offense level, criminal history category, and sentencing guidelines range provided before sentencing is preliminary and is not binding on the parties to this agreement, the Probation Office, or the Court.   Until the Probation Office has fully investigated the defendant's criminal history, it is not possible to predict with certainty the defendant's criminal history category and, in some cases, the defendant's offense level.

    iii.  Under certain circumstances, the defendant's criminal history may affect the defendant's offense level under the federal sentencing guidelines.  If the presentence investigation reveals that the defendant's criminal history may support an offense level different than an offense level stipulated in this agreement, the parties are not bound by any such stipulation as to the defendant's offense level and may advocate with respect to how the defendant's criminal history affects the offense level.

d.  **Factual findings:**  The defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the defendant or stipulated by the parties.  In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay.   The Defendant understands that the sentence imposed may be determined based upon such judicial fact-finding.

e. **Use of the Defendant's Statements:** The defendant understands that the sentencing court may consider any statement that the defendant has made or makes in this Plea Agreement, during the guilty plea, to the Probation Office, and at sentencing when imposing sentence.  In addition the government may be able to use the defendant's statements in this agreement and at the guilty plea and at sentencing in any criminal, civil, or administrative proceeding.  For example, if the defendant fails to enter a guilty plea (as required by this agreement) or the defendant's guilty plea is later withdrawn or vacated for any reason other than the Court's rejection of this Plea Agreement under Fed. R. Crim. P. 11(c)(5), the government may introduce the defendant's statements into evidence in any prosecution.  If, however, the Court rejects this Plea Agreement under Fed. R. Crim. P. 11(c)(5), and the defendant withdraws the guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(A), the government will not be permitted to use any of the defendant's statements in this Plea Agreement.  To the extent that Rule 11(f) of the Federal Rules of Criminal Procedure and/or Rule 410 of the Federal Rules of Evidence are inconsistent with this paragraph, the defendant waives (gives up) any protections under those rules.

f. **Government's Discretion to Recommend a Sentence:**  Unless a stipulation in this agreement explicitly limits the government's discretion with respect to its recommendations at sentencing, this agreement does not prevent the government from urging the sentencing Court to find that a particular offense level, criminal history category, ground for departure, or guidelines range applies; from recommending a specific sentence within the applicable guidelines range as

determined by the Court or as urged by the government; or, if the government deems appropriate, recommending that the Court impose a sentence above the applicable guidelines range.

g. **Sentencing-Related Information:**  The government has the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within the count(s) to which the defendant has agreed to plead guilty, subject only to the limitation described in U.S.S.G.§1B1.8.  No stipulation in this plea agreement limits the obligations of both parties to ensure that the sentencing Court has all information pertinent to its determination of an appropriate sentence.  The parties may provide any factual information relevant to sentencing to the Probation Office and/or to the Court, without limitation, before or after the completion of the Presentence Investigation Report.  The parties agree that the submission of such information shall not be deemed "advocacy" in violation of any stipulation in this plea agreement.

h. **Supervised Release Term and Conditions:** If the defendant is placed on supervised release, under some circumstances, including the defendant's violation of one or more supervised release conditions, the Court may extend the term of supervised release, and may modify, reduce, or enlarge the conditions of such release.

F. **Other Adverse Consequences**: The following are some examples of the adverse consequences of pleading guilty other than the sentence imposed by the Court, along with any judicial order of forfeiture and/or restitution:

a. Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

b. If the defendant is not a United States citizen, such conviction may result in deportation or removal from the United States, and may bar readmission to the United States if the defendant leaves the country.  Under federal law, removal or deportation may be an almost certain consequence of a conviction for a broad range of federal offenses, including, but not limited to, aggravated felonies, as defined in 8 U.S.C. § 1101(a)(43), and crimes of moral turpitude, which includes crimes involving fraud.  Removal and other immigration consequences are the subject of a separate proceeding.  No one, including the defendant's attorney and the Court, can predict with certainty the effect of the conviction resulting from this agreement on the defendant's immigration status. The defendant understands this uncertainty and nonetheless wishes to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

c. A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

There may be other adverse consequences as well, some of them unforeseeable.  It may be difficult or impossible to predict all of the adverse consequences of the defendant's guilty plea.  The defendant agrees that any resulting adverse consequences, whether or not foreseen or foreseeable, will not provide a basis for withdrawing from the guilty plea

described in this agreement or otherwise challenging the resulting conviction and sentence.

G. **Restitution:** Independent of any agreement to pay restitution, and whether there is any such agreement, the sentencing Court may be required to order that the defendant pay restitution to any victim of the offense(s) of conviction under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A.   In addition, the sentencing Court may have the authority to order that the defendant pay restitution to any victim of the offense(s) of conviction pursuant to 18 U.S.C. §§ 3663 & 3664.

H. **Forfeiture:** If the defendant has agreed to forfeiture of assets, the defendant agrees to the following terms and conditions:

   a.   The defendant hereby forfeits, to the United States, all right, title, and interest of any nature in any and all assets that are subject to forfeiture, including substitute assets, as set forth above, whether those assets are in the possession or control of the defendant, a nominee, or some other third party.

   b.   The defendant consents to the entry of an order of forfeiture of the assets described above.

   c.   The defendant is aware that pursuant to Rule 32.2(b)(4)(A) of the Federal Rules of Criminal Procedure, a preliminary order of forfeiture becomes final as to a given defendant at sentencing or at any time before sentencing if the defendant consents.  The defendant consents that the preliminary order of forfeiture in this case shall become final as to the defendant before sentencing, as of the date the preliminary order of forfeiture is entered by the Court.   The defendant understands that the government, upon entry of the preliminary order of

forfeiture, will address any potential third party claims pursuant to Rule 32.2(c), and seek to finalize forfeiture.

d.  Forfeiture of the defendant's assets will not satisfy all, or any portion of, a fine, restitution, or other monetary penalty that the Court may impose upon the defendant in addition to forfeiture.  Satisfaction of all, or any portion of, any restitution, fine, or other penalty that the Court may impose upon the defendant in addition to forfeiture will not satisfy all, or any portion of, any forfeiture judgment ordered by the Court.

e.  In the event that any successful claim is made, by any third party, to the assets described above, the defendant agrees to forfeit substitute assets equal in value to the assets transferred to any such third party.  The defendant agrees that forfeiture of substitute assets shall not be deemed an alteration of the Defendant's sentence.

f.  The defendant agrees to cooperate with the United States by taking whatever steps are necessary to pass clear title to the United States of any forfeitable assets, including but not limited to, surrendering title; completing any documents or legal proceedings required to transfer assets to the United States; and taking necessary steps to ensure that assets subject to forfeiture are not sold, disbursed, expended, destroyed, damaged, hidden or otherwise made unavailable for forfeiture or removed beyond the jurisdiction of the Court.

g.  The defendant waives the right to a jury trial on the forfeiture of assets.  The defendant waives all constitutional, legal, and equitable defenses to the forfeiture of assets, as provided by this agreement, in any proceeding, including but not limited to any jeopardy defense or claim of double jeopardy or any claim or

defense under the Eighth Amendment to the United States Constitution, including any claim of an excessive fine.

h. The defendant acknowledges that the government may institute civil or administrative proceedings against any or all of the defendant's forfeitable assets, including, but not limited to substitute assets and any forfeitable assets not identified by the defendant, and agrees not to contest any such forfeiture proceedings.

i. The defendant represents and warrants that the defendant has no direct or indirect interest in any property, real or personal, or other asset subject to forfeiture by virtue of this plea agreement, other than those listed above.

j. The defendant acknowledges joint and several liability for the amount of any money judgment set forth above.

k. In the event the government determines that the defendant has breached any condition of this plea agreement, none of the forfeited property shall be returned to the defendant, nor shall the defendant assert any claim to the forfeited property. The defendant shall not reacquire any forfeited property, directly or indirectly, through family members, nominees, friends, or associates.

I. **Determination of Financial Condition and Payment of Interest and Penalties:**

a. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.

19

b.   The defendant will promptly submit a complete, accurate, and truthful financial statement to the United States Attorney's Office, in a form it provides and as it directs.

c.   The defendant authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

d.   Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the defendant's sentence, from as early as the date of sentencing.

J.   **Remedies for Breach**:

a.   Should the government determine that the defendant, after the date the defendant has signed this plea agreement, (i) has committed any further crime or violated any condition of release or supervision imposed by the Court (whether or not charged); (ii) has given false, incomplete, or misleading testimony or information; or (iii) has moved to withdraw the defendant's guilty plea for reasons other than those described in this agreement or otherwise has breached any term or condition of this plea agreement or supplemental agreements with the government, the government will have the right, in its sole discretion, to void this agreement, in whole or in part.  In the event of such breach, the defendant will remain obligated to plead guilty and otherwise comply with the terms of this agreement and will not be permitted to withdraw the defendant's guilty plea under this agreement. The defendant will be subject to prosecution for any federal criminal violation of

which the government has knowledge, including but not limited to charges that this Office has agreed to dismiss or not to prosecute under this agreement.

b.  If the defendant breaches this agreement, the government will have the following remedies, among others, available to it:

    i.  To bring prosecution for any federal criminal offenses dismissed or not prosecuted under this agreement.  The defendant waives (gives up) any defense or objection to the commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date on which the defendant signed this plea agreement, notwithstanding the expiration of the statute of limitations between the signing of the agreement and the commencement of any such prosecution.

    ii.  In connection with any such prosecution, any information, statement, and testimony provided by the defendant, and all leads derived therefrom, may be used against the defendant, without limitation and without regard to any rights the defendant may have under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410.

    iii.  To utilize any information, statement, or testimony provided by the defendant in any proceeding, including at sentencing, notwithstanding U.S.S.G.§1B1.8;

    iv.  To advocate if, and how, any particular adjustment or specific offense characteristic affects the applicable Sentencing Guidelines range without regard to any contrary stipulations contained in this agreement;

     v. To refrain from making any sentencing-related motion favorable to the defendant without regard to any provision in this agreement obligating the government to consider making or make such motion upon fulfillment of certain conditions;

     vi. To urge the sentencing Court to take the defendant's breach into account when imposing sentence;

     vii. To recommend any sentence the government deems appropriate, even if such recommendation is at odds with any stipulation in this agreement.

K. **Limitations**: This agreement is between the United States Attorney's Office for the Northern District of New York and the defendant. References to "the government" in this agreement refer only to that Office. This agreement does not bind any other federal, state, or local prosecuting authorities. Furthermore, this agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability, proceedings relating to the forfeiture of assets.

L. **Agreement Must be Signed; Modifications Must be Written or on the Record**: This agreement, to become effective, must be signed by all of the parties listed below. No promises, agreements, terms, or conditions other than those set forth in this plea agreement will be effective unless memorialized in writing and signed by all parties or confirmed on the record before the Court.

M. **Agreement to Plead Guilty Voluntary**: The defendant acknowledges reading each of the provisions of this plea agreement with the assistance of counsel and understands its

provisions. The defendant further acknowledges that the defendant's agreement to plead guilty is voluntary and did not result from any force, threat, or promises (other than the promises in this plea agreement and any written supplemental agreements or amendments).

RICHARD S. HARTUNIAN
United States Attorney
Northern District of New York

_____        January 22, 2014
Stephen C. Green                         Date
Assistant United States Attorney
Bar Roll No.

_____        January 22, 2014
Eric J. Feight                           Date
Defendant

_____        January 22, 2014
Peter Moschetti                          Date
Attorney for Defendant
Bar Roll No.