```
 1              UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF NEW YORK

 3

 4  UNITED STATES OF AMERICA,   )
                                )
 5                              )    CASE NO.:  14-CR-12
                                )
 6       VS.                    )
                                )
 7  ERIC J. FEIGHT,             )
              Defendant.        )
 8  _____)

 9

10            TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE GARY L. SHARPE
11          WEDNESDAY, JANUARY 22, 2014
                ALBANY, NEW YORK
12

13  FOR THE GOVERNMENT:
        Office of the United States Attorney
14      By:  Stephen C. Green, AUSA, & Richard D. Belliss, AUSA
        445 Broadway, Room 214
15      Albany, New York  12207

16

17  FOR THE DEFENDANT:
        Anderson, Moschetti & Taffany, PLLC
18      By:  Peter J. Moschetti, Esq.
        26 Century Hill Drive, Suite 206
19      Latham, New York  12110

20

21

22

23         THERESA J. CASAL, RPR, CRR, CSR
              Federal Official Court Reporter
24               445 Broadway, Room 509
                 Albany, New York  12207
25


              THERESA J. CASAL, RPR, CRR
         UNITED STATES DISTRICT COURT - NDNY
```

1              (Court commenced at 11:06 AM.)

2              THE CLERK:  The date is Wednesday, January 22,

3    2014, at 11:00 AM.  In the matter of the United States of

4    America versus Eric J. Feight, case number 14-CR-12.  We are

5    here for a waiver and plea hearing.  Could we have

6    appearances for the record, please.

7              MR. GREEN:  For the United States, Assistant

8    United States Attorney Stephen Green and Richard Belliss.

9    Good morning, your Honor.

10             THE COURT:  Good morning.

11             MR. MOSCHETTI:  Peter Moschetti for Eric Feight.

12   Good morning.

13             THE COURT:  Good morning, Mr. Moschetti.  Good

14   morning, Mr. Feight.  All right.  As I understand it,

15   Mr. Moschetti, pursuant to the terms of a written plea

16   agreement, it's Mr. Feight's intention to waive indictment

17   and enter a plea of guilty to an information, which charges

18   him with providing material support to terrorists, in

19   violation of 18 USC 2339A(a).  Am I correct?

20             MR. MOSCHETTI:  You are correct, your Honor.

21             THE COURT:  Mr. Feight, in order for me to permit

22   you to waive indictment and to enter a plea to this

23   information, I need to be satisfied of three things:  I need

24   to be satisfied that you understand the consequences of

25   waiving indictment and pleading guilty, that it's your free

1   choice to do those two things, and insofar as the plea is
2   concerned I need to be satisfied that there are facts that
3   would support your admission to this charge.  In order for
4   me to be satisfied of these things, you and I need to talk,
5   the conversation is under oath, and subject to the penalties
6   of perjury, you're obligated to tell me the truth to the
7   questions I ask.  Do you understand?
8               THE DEFENDANT:  Yes, your Honor.
9               THE COURT:  Mr. Law, would you administer an oath
10  to Mr. Feight, please?
11              THE CLERK:  Mr. Feight, please stand and raise
12  your right hand.
13                    (Defendant duly sworn.)
14              THE COURT:  How old are ya, Mr. Feight?
15              THE DEFENDANT:  Fifty-five.
16              THE COURT:  And how far did ya get in school?
17              THE DEFENDANT:  Just short of a Bachelor's Degree.
18              THE COURT:  Can ya read English?
19              THE DEFENDANT:  Yes, sir.
20              THE COURT:  We've got several documents here.
21  We've got a waiver of indictment, we've got an information
22  and we've got a plea agreement.  Did ya read all of those
23  things?
24              THE DEFENDANT:  Yes, your Honor.
25              THE COURT:  Do you feel you understood what you

1  read?

2  THE DEFENDANT: Yes, your Honor.

3  THE COURT: In particular, with respect to the

4  plea agreement, I'm sure you had questions as you read that.

5  Did you discuss your questions and the plea agreement with

6  Mr. Moschetti?

7  THE DEFENDANT: Yes, I did.

8  THE COURT: I'm sure as you asked him questions he

9  provided you answers. Did he answer those questions in a

10 way so that you feel you understand what's in that plea

11 agreement?

12 THE DEFENDANT: Yes, he did.

13 THE COURT: All right. I'm gonna incorporate the

14 terms of the plea agreement into the record of these

15 proceedings. I'm not going through every provision of that

16 plea agreement, but there are some in the plea agreement

17 that deal with the things I said we needed to talk about.

18 Are you on any medication?

19 THE DEFENDANT: No, your Honor.

20 THE COURT: Any drugs or alcohol in the last

21 48 hours?

22 THE DEFENDANT: No, your Honor.

23 THE COURT: Any reason that I wouldn't know about

24 as to why you wouldn't understand this conversation with me?

25 THE DEFENDANT: No, your Honor.

1  THE COURT:  If I say anything you don't
2  understand, you stop me and I'll back up and see whether I
3  can explain it in a way to make certain you understand, all
4  right?
5  THE DEFENDANT:  Yes, your Honor.
6  THE COURT:  All right.  Let's take up the first
7  issue, the consequences of, number one, waiving indictment
8  and the consequences, number two, of pleading guilty.  Both
9  of these things impact rights that you have under the United
10  States Constitution.  So let's talk about the grand jury
11  process.  A grand jury is different than a trial jury, their
12  function is different.  A grand jury's function is to
13  consider evidence submitted to them, typically by the
14  Government, and evaluate that evidence and the law and
15  decide whether there's reason to believe that a person
16  committed a crime and what crime there is reason to believe
17  he committed.  So it's a screening function.  In essence, a
18  grand jury stands between the defendant and the Government
19  so that before formal charges are brought forward, they
20  screen that evidence.  A grand jury consists of between 16
21  and 23 people, they typically sit for a year,
22  year-and-a-half, and not all 23 have to be present for them
23  to act, 16 do, and 12 of the 16 have to agree in order to
24  return an indictment.
25  Now, if they agree after screening the

1  Government's evidence, then they authorize the return of an
2  indictment; an indictment's a formal charge.  In reality, an
3  indictment doesn't read any differently than the information
4  you've read and discussed with your attorney.  The only
5  difference between the two is the indictment's called an
6  indictment while this is called an information and where the
7  indictment would also have the signature of the foreperson
8  of a grand jury, an information does not because there's
9  been no presentation to a grand jury.  It's not uncommon for
10 a defendant not to force the Government to go through the
11 grand jury process and instead agree to waive that process
12 and to proceed on the basis of an information instead of an
13 indictment.  And that's what you're doing in this case.
14         So you understand you're giving up the rights you
15 have under the United States Constitution to have this case
16 presented to a grand jury?
17         THE DEFENDANT:  Yes, your Honor.
18         THE COURT:  Let's then talk about the plea and the
19 consequences of a plea.
20         The first consequence of a plea is that there's
21 not gonna be any jury trial.  So, again, you'll be giving up
22 your rights you have to a jury trial under the Constitution.
23 If you decided you wanted a jury trial, we would bring in
24 about 35, 40 people, drawn randomly from the community.
25 From their midst, we would pick 12 to sit as the trial jury.

1  You, your attorney, the Government and I would all have some
2  say in who those 12 folks were.  They would sit and listen
3  to the evidence in the case, my instructions on the law and
4  at the conclusion of the case, they would have to be
5  unanimously satisfied beyond a reasonable doubt that the
6  Government proved your guilt of the charge that's contained
7  in the information.
8           Under the Constitution, you have a right to remain
9  silent, not to incriminate yourself.  Therefore, at trial,
10 you'd have a choice to make:  As I just said, you could
11 remain silent and do nothing, you don't have to prove your
12 innocence, the Government has to prove your guilt.  If
13 that's the choice you made, I would tell the trial jury they
14 could not consider your silence as any evidence of your
15 guilt.  On the other hand, you could choose to fully
16 participate, you could testify if you wished, you could use
17 my powers to subpoena witnesses and evidence on your behalf,
18 and certainly you'd want to Mr. Moschetti to cross-examine
19 the Government's witnesses and contest its evidence.
20 Regardless of which choice you made, it wouldn't alter the
21 fact that in the end, the Government would be compelled to
22 prove your guilt to the unanimous satisfaction of those 12
23 jurors beyond a reasonable doubt.  If I accept your plea
24 here this morning, there's not gonna be any trial, you're
25 giving those rights up that I just described under the

1   Constitution.  Do you understand that?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  All right.  Let's turn to the issue
4   which I know is most important to you and that is the issue
5   of sentence.  I've frequently said I'm not a fan of the
6   federal system, but I'm a federal judge and, therefore, I've
7   got to apply federal law.  And there's a difference in
8   federal law versus state law.  If this were a state court
9   case, it would be likely that Mr. Moschetti and the
10  Government would have sat down with a County Court Judge,
11  discussed the case, and the judge would have given some
12  information about what sentence he might impose when that
13  day came.  In federal court, Congress will not let me do
14  that, I've had no conversations with Mr. Moschetti, I've had
15  no conversations with the Government and, as I sit here, I
16  don't know what sentence I'll impose when sentencing day
17  comes due.  I can explain the process to you.

18             If I accept your plea here this morning, I'm going
19  to ask Probation to prepare a presentence report.  They're
20  gonna sit down and discuss the life and times of you and
21  when they're done with that discussion, they'll put it in
22  writing in a presentence report.  Before the day of
23  sentencing, you'll see that report, your attorney will see
24  it, the Government will see it, I'll see it.  Before the day
25  of sentencing, everybody will get a chance to submit

1   anything to me in writing that they feel is important for me
2   to consider for purposes of sentencing and then, on the
3   sentencing day, everybody gets a shot at talkin' to me.
4   Once I've read everything, once I have listened to
5   everybody, it will then be my obligation to impose a
6   sentence that I think is reasonable and is consistent with
7   any statutory constrictions that Congress places on me.  So
8   that's the process.  Ya understand that?
9            THE DEFENDANT:  Yes, your Honor.
10           THE COURT:  All right.  That doesn't mean,
11  however, that there aren't some things we can say about that
12  process today.  You recognize that every crime has different
13  penalties that are associated with it.  For instance, if ya
14  get caught speeding, the penalties for speeding are not the
15  same if you get caught murdering somebody, the penalties are
16  different, and that's what your plea agreement is talking
17  about, it's talking about what are the maximum possible
18  penalties associated with the crime that you intend to plead
19  guilty to.
20           So, in the plea agreement it tells you, first of
21  all, that there's a special assessment, that's what I call a
22  Congressional processing fee, it's a hundred dollars per
23  felony that's imposed on every defendant; so it calls for a
24  $100 special assessment.  Other terms of your agreement
25  include a forfeiture provision; you're agreeing to forfeit

1   certain things, drawings, schematics and diagrams, and 70
2   point-to-point wireless radio devices, so there's a
3   forfeiture agreement there.  Then the potential maximum
4   penalties in terms of this crime, the maximum penalty is
5   15 years; there is no mandatory minimum, that means there's
6   no bottom sentence that Congress requires me to impose.
7   There's the possibility of supervised release for a term up
8   to life.  Supervised release is federal jargon for what most
9   people know as parole.  If I were to impose a term of
10  supervised release, it would be under conditions.  If you
11  were to violate those conditions, you could be returned to
12  prison.
13          And then there are other adverse consequences
14  associated with a guilty plea to a felony charge.  Now,
15  those adverse consequences don't necessarily have anything
16  to do with any sentence I will impose, but they are certain
17  adverse things that follow from a felony plea.  As your plea
18  agreement tells you, those things include things like the
19  loss of the right to vote and the loss of the right to bear
20  firearms under the Second Amendment.  And a felony plea can
21  have an adverse consequence on various licensing issues that
22  somebody may be involved in in the future.  Do you
23  understand those are all possible consequences of pleading
24  guilty?
25          THE DEFENDANT:  Yes, your Honor.

1    THE COURT:  There's a provision in your plea
2 agreement that relates to a waiver of a right to appeal and
3 collateral attack, it's contained in paragraph 7 of your
4 plea agreement, over on page 10.  I like to explain this in
5 my own way:  Ordinarily, whether somebody goes to trial and
6 they're convicted or whether they plead guilty, as you're
7 intending to do, once they are sentenced, without something
8 like a waiver of appeal and collateral attack, they would
9 have a right to appeal, once sentenced, both the
10 circumstances of their plea and whatever sentence I impose.
11 Another way in which they might challenge those two things
12 is to file a motion with me within one year of the date of
13 sentence; that motion, like all things, has a fancy legal
14 name, it's called habeas corpus, and again, the person would
15 challenge the circumstances of the plea and whatever
16 sentence I impose.  What you're agreeing to in this
17 paragraph is that once I have sentenced you, if that
18 sentence is 180 months or less, you will not appeal or later
19 challenge by motion either your plea or your sentence.  Do
20 you understand that?
21    THE DEFENDANT:  Yes, your Honor.
22    THE COURT:  The little nuance of that is this:
23 If, for any reason, my sentence should exceed 180 months,
24 you can appeal or later challenge the sentence but not the
25 plea.  Do you understand that?

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  Let me turn to the second issue I said

3   we needed to talk about; the law calls it the voluntariness

4   of your decisions here, I call it free choice.  Here's what

5   it means:  I've told you about the rights you have, to have

6   your case presented to a grand jury and to a jury trial if

7   you wanted one, and I've explained to you that you have a

8   right to insist on those rights under the Constitution.

9   You've indicated to me you wish to waive both and enter a

10  plea of guilty.  I can permit you to do those things as long

11  as that's a voluntary decision by you.  Now that means the

12  decision to waive indictment and the decision to plead

13  guilty belongs to you and you alone, you own it.  They don't

14  belong to Mr. Moschetti, don't belong to anybody else, they

15  belong to you.  I can permit you to do those things as long

16  as it's your free choice to do them.  That means nobody's

17  threatened you in order to get you to either waive

18  indictment or plead guilty, nobody's threatened you somehow

19  to either waive indictment or plead guilty, and nobody's

20  made you some promise they should not have made to get you

21  to do those two things, and in those terms, I'm not

22  including anything that's in the plea agreement, there's

23  nothing untoward about the provisions in the plea agreement.

24  Have any of those things happened?

25             THE DEFENDANT:  No.

*USA v. Feight - 14-CR-12*

1      THE COURT:  Is it your free choice to waive
2 indictment?
3      THE DEFENDANT:  Yes, it is.
4      THE COURT:  Is it your free choice to plead
5 guilty?
6      THE DEFENDANT:  Yes, it is.
7      THE COURT:  The last thing I said we needed to
8 chat about is I need to be satisfied, insofar as the plea is
9 concerned, that there's a set of true facts that would
10 support your admission to this charge.  Now, in that regard,
11 your plea agreement contains a factual basis for the plea,
12 beginning on page 3, paragraph 5, of your plea agreement.
13 Here's what I do in every case before I come out here on the
14 bench and there's a plea agreement:  I read the plea
15 agreement before I come out on the bench and I read that
16 paragraph.  All plea agreements typically contain paragraphs
17 like that.  I've already decided that if those facts are
18 true, they would support your plea to this charge.  I know
19 you signed the plea agreement and I know you discussed it
20 with your attorney, but I like to make doubly certain at
21 this point:  Are the facts recited in that plea agreement
22 true?
23      THE DEFENDANT:  Yes, they are.
24      THE COURT:  You're admitting them to me?
25      THE DEFENDANT:  Yes, I am.

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*

1    THE COURT:  Then as to the charge that's contained
2  in the information -- namely, providing material support to
3  terrorists -- how do you plead, guilty or not guilty?
4    THE DEFENDANT:  Guilty.
5    THE COURT:  Do you have any questions of me?
6    THE DEFENDANT:  No, your Honor.
7    THE COURT:  As I always do, I've watched
8  Mr. Feight as he and I have talked, I've maintained eye
9  contact with him.  As I've frequently said, the way in which
10 somebody responds and the body language is sometimes as
11 important to me as the answers to the questions I ask.
12 There's no doubt in my mind that Mr. Feight has honored the
13 terms of the oath that he took at the outset of these
14 proceedings and he's told me the truth to the questions that
15 I have asked.  Based on his answers, based on the provisions
16 that are contained in the plea agreement, which I've
17 incorporated into the record of these proceedings, I
18 absolutely believe that he understands the consequences of
19 waiving indictment and pleading guilty, including the
20 consequences of the appellate waiver that he and I have
21 discussed; that it's his free choice to do these things;
22 and, as I said, I read the facts that are contained in the
23 factual portion of the plea agreement and I'm satisfied that
24 they support his admission to this charge.  So, for all of
25 those reasons, I'll accept his waiver of indictment, I'll

1  accept his plea and we'll set sentencing for when, Mr. Law?
2          THE CLERK:  Sentencing is scheduled for May 22,
3  2014, at 9:00 AM.
4          THE COURT:  I'll request Probation to prepare a
5  presentence report.
6          Anything further on the part of the Government?
7          MR. GREEN:  Nothing at this time, your Honor.
8          THE COURT:  Mr. Moschetti?
9          MR. MOSCHETTI:  Judge, I know you may not have
10 control over this, but as far as where they're gonna take
11 Mr. Feight, he was initially in Rensselaer County for a
12 period of time, he was then moved, for whatever reason, by
13 the Marshals to Washington County in Fort Edward, which is
14 quite a distance from his home and quite a distance from my
15 office.  He was last night brought back down to Rensselaer
16 County for this morning's proceedings.  And whatever
17 influence you have, I would ask if they could leave him at
18 Rensselaer County, one, for my benefit, 'cause there's still
19 a great deal to do on the case, and it's only 10, 15 minutes
20 from my office, as opposed to an hour drive, and the same
21 for his family, he has a wife and children.  So I would ask
22 if they can do that that they do.  I understand you have no
23 control over that.
24         THE COURT:  They've heard ya because they're
25 sitting here.  Let me explain what's goin' on in that

1  regard, and often defendants and attorneys don't understand
2  it.  There are no federal holding facilities in the Northern
3  District of New York, so we don't have a pretrial detention
4  facility like some districts in the country have.  The
5  Marshals are under contract with various county jails for
6  cell space to house federal prisoners, either pretrial or,
7  in some circumstances, post conviction.  So the space is
8  limited.  They have to ferry those prisoners back and forth
9  for various court appearances, for various judges.  I'm not
10 the only judge in the district, and, therefore, a part of
11 their problems are coordinating those appearances so they
12 can facilitate getting people here when they need to be
13 here.  They're aware of the fact that Probation is gonna
14 have to do a presentence report and those kinds of things
15 here, but, by the same token, they have other concerns than
16 just this case, having nothing necessarily to do with us or
17 me, could be other judges, could be other things, and then
18 there are various other problems that they suffer through,
19 having nothing to do with the federal process.  All of a
20 sudden a county jail has an overflow of inmates from the
21 state system and even though they're under contract for
22 certain cells, they're told sorry, we need the cell, you
23 gotta move a prisoner.  So there are a thousand different
24 issues these guys are dealin' with from pretrial detention.
25 They're not doin' anything to penalize you, either your

1  attorney or you, and they'll work with ya to the extent they
2  can, but there are other issues they're dealing with.  So
3  they've heard the request because they're sitting here and
4  they'll do what they can to accommodate ya, but I have no
5  control over those issues they're dealing with, nor do I
6  want to be involved on a day-to-day basis with the
7  machinations of local county jails.  Anything further?
8              MR. GREEN:  Not at this time, Judge.
9              THE COURT:  Anything further?
10             MR. MOSCHETTI:  Nothing, your Honor.
11             THE COURT:  Thank you.
12                  (This matter adjourned at 11:25 AM.)
13                         - - - - -

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*

*USA v. Feight - 14-CR-12*

1          CERTIFICATION OF OFFICIAL REPORTER

2

3

4          I, THERESA J. CASAL, RPR, CRR, CSR, Official

5   Realtime Court Reporter, in and for the United States

6   District Court for the Northern District of New York, do

7   hereby certify that pursuant to Section 753, Title 28,

8   United States Code, that the foregoing is a true and correct

9   transcript of the stenographically reported proceedings held

10  in the above-entitled matter and that the transcript page

11  format is in conformance with the regulations of the

12  Judicial Conference of the United States.

13

14          Dated this 2nd day of December, 2015.

15

16          **/s/ THERESA J. CASAL**

17          THERESA J. CASAL, RPR, CRR, CSR

18          FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*